[No. G033558. Fourth Dist., Div. Three. Feb. 15, 2005.]

SABINA C. BROWN, Cross-complainant and Appellant, v.
PROFESSIONAL COMMUNITY MANAGEMENT, INC., et al,
Cross-defendants and Respondents.

**COUNSEL**

Richard Paul Herman for Cross-complainant and Appellant.

Fiore, Racobs & Powers, John R. MacDowell, Michael C. Fettig; Jackson, DeMarco & Peckenpaugh and Paul E. Van Hoomissen for Cross-defendants and Respondents.

**OPINION**

**IKOLA, J.**—Cross-complainant Sabina C. Brown cross-complained against her homeowners association, Lake Forest Keys (LFK), and its property management company, Professional Community Management, Inc. (PCM). She alleged under various legal theories that she, and the class she purported to represent, had been charged assessments or fees exceeding the amount necessary to defray the costs for which the assessments or fees had been levied. In her "Corrected Third Amended Cross-Complaint" (cross-complaint), Brown claimed the alleged conduct of both LFK and PCM violated Civil Code section 1366.1[1] and gave rise to remedies against both cross-defendants for negligence, a violation of section 52.1 and of article I of the California Constitution, civil conspiracy, and a violation of section 1750 et seq., the Consumers Legal Remedies Act.

---

[1] All further statutory references are to the Civil Code unless otherwise stated.

The court sustained PCM's demurrer to Brown's cross-complaint without leave to amend, and entered a judgment of dismissal on the cross-complaint as to PCM. Brown contends the court erred by concluding PCM owed no duty to Brown under section 1366.1. She also contends the litigation privilege, section 47, subdivision (b)(2), does not apply to the alleged conduct.[2] We disagree with Brown's first contention, find it unnecessary to reach the second, and affirm the judgment.

## FACTS

Our factual summary "accepts as true the facts alleged in the complaint, together with facts that may be implied or inferred from those expressly alleged." (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505 [108 Cal.Rptr.2d 657].) Brown's cross-complaint is not a model of clarity. But she appears to challenge the legality of certain fees charged by PCM for providing collection services to LFK, which fees are then passed along to the delinquent homeowner. We extract from her cross-complaint the following material allegations.

PCM is in the business of providing services to homeowners associations such as LFK. The homeowners associations serviced by PCM levy "various fees, fines, liens, imposts, charges, [and] interest charges . . . against thousands of homeowners." In connection with its services to LFK, PCM prepares " 'late letters' and 'lien letters' for which it charges a fee and therefore shares in the profits of these illegal fees." The subject fees, "under whatever name, exceed 'the amount necessary to defray the cost for which they are levied' in violation of Civil Code, section 1366.1." Brown alleges the fees in excess of those permitted by section 1366.1 have been charged negligently by PCM (first cause of action), the excessive charges entitle Brown to damages under section 52.1 (second cause of action), PCM conspired with LFK to charge excessively and shared in the "profits" by charging a "late letter fee" (third cause of action), and PCM has "represented that transaction [*sic*] involves rights, remedies or obligations which does not have or involve and which are specifically prohibited by flaw [*sic*] under Civil Code, Section 1366.1, in violation of Civil Code, Section 1770(a)(14)" (fourth cause of action).

---

[2] The notice of appeal also purports to appeal from the denial of a motion for class certification. Because Brown has not briefed these issues, she has waived her appeal from the order denying class certification. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481] [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration. [Citations.]' "].)

## DISCUSSION

■ "In determining whether plaintiff[] properly stated a claim for relief, our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment; if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].

*Section 1366.1 Does Not Limit PCM's Fees*

■ At the outset, we note that Brown offers no argument as to why the demurrer to her third cause of action should have been overruled. Her third cause of action alleged entitlement to a remedy under section 52.1, presumably on the ground that imposition of PCM's fees constituted an infringement of rights secured to her by the federal and state Constitutions. We decline to address the third cause of action. "When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary." (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700 [46 Cal.Rptr.2d 119].) We turn to the other three causes of action, each of which is premised on conduct alleged to violate section 1366.1.[3]

■ Because this case turns on the language of section 1366.1, and an understanding of the conduct it prohibits, we begin with the words of the statute. "*An association* shall not impose or collect an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied." (*Ibid.*, italics added.) Section 1366.1 is part of the Davis-Stirling Common Interest Development Act (the Act), section 1350 et seq. Under the Act, an " 'association' means a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development."

---

[3] The fourth cause of action, for violation of the Consumers Legal Remedies Act, is, as pleaded, nearly incomprehensible. But we construe the inartful and typographical-error-ridden pleading to allege, in effect, that PCM's charge of a fee in excess of its cost constitutes a representation to the homeowner that it owes an obligation that, in fact, the homeowner does not have. (See § 1770, subd. (a)(14).)

(§ 1351, subd. (a).) The Act requires that "[a] common interest development shall be managed by an association which may be incorporated or unincorporated." (§ 1363, subd. (a).) An "association" is charged under the Act with many specific duties, responsibilities, and restrictions, one of which is set forth in section 1366.1—not to charge an assessment or fee in excess of the amount necessary to defray the costs for which it is levied.

■ In construing section 1366.1, " ' "as with any statute, we strive to ascertain and effectuate the Legislature's intent" ' [Citations.] 'Because statutory language "generally provide[s] the most reliable indicator" of that intent [citations], we turn to the words themselves, giving them their "usual and ordinary meanings" and construing them in context [citation].' [Citation.] If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs." (*People v. Robles* (2000) 23 Cal.4th 1106, 1111 [99 Cal.Rptr.2d 120, 5 P.3d 176].)

■ Here, the language of section 1366.1, in context, contains no ambiguity. The statute prohibits an "association" from charging fees or assessments in excess of the costs for which the fee or assessment is charged. As noted *ante*, an "association" is a defined term under the Act, and the definition requires the "association" to be a nonprofit entity. In contrast, the Act imposes *separate* duties on a managing agent. (See §§ 1363.1 & 1363.2.) And those statutory duties are owed to the "association" and its board of directors, not to individual owners of separate property interests in the common interest development. (§§ 1363.1 & 1363.2.) Significantly, the Act does *not* require a managing agent to be a nonprofit entity. It is clear, both from the definitions in the Act and from the separately imposed duties, the Legislature meant "association," when it used that term, and it meant "managing agent," when it used that term.

■ Thus, we understand the section 1366.1 prohibition, which runs expressly against an "association," to mean, for example, that fees or assessments levied against homeowners for the purpose of defraying the cost of mowing the grass in the common areas, or of painting the association's clubhouse, or of replacing the deck of the association's swimming pool, or any other of the myriad of the association's management and maintenance responsibilities, may not exceed the *cost to the association* for providing those services.

The Act contemplates the officers and directors of an association will be volunteer homeowners. (See § 1365.7 [limiting liability of volunteer officers and directors].) Surely, the individual homeowners acting as volunteer officers

and directors are not expected to perform all of the required services personally, and at no cost. Instead, the association must either hire employees or contract with others to provide the services. Landscape maintenance contractors are hired to mow the grass, painters are hired to paint the clubhouse, swimming pool contractors are hired to repair the pool deck, and managing agents, such as PCM, are hired to make these arrangements, and, importantly, to collect the fees and assessments levied against the homeowners. The costs incurred by the association, for which it levies an assessment or charges a fee, necessarily include the fees and profit the vendor charges for its services. While section 1366.1 prohibits an association from marking up the incurred charge to generate a profit for itself, the vendor is not similarly restricted. Plaintiff would have it that no vendor selling its services to an association could charge a fee, or, indeed, continue in business as a profit-making enterprise. That cannot be the law.

Indeed, section 1366, subdivision (e), authorizes an association to charge homeowners the very type of fees challenged by plaintiff. "If an assessment is delinquent the association may recover all of the following: [¶] (1) *Reasonable costs incurred in collecting* the delinquent assessment, including reasonable attorney's fees. [¶] (2) A late charge not exceeding 10 percent of the delinquent assessment or ten dollars ($10), whichever is greater . . . . [¶] (3) Interest on all sums imposed in accordance with this section, including the delinquent assessments, reasonable fees and costs of collection, and reasonable attorney's fees, at an annual interest rate not to exceed 12 percent . . . ." (Italics added.) In spite of this statutory authorization, Brown alleges that PCM prepares " 'late letters' and 'lien letters' for which it charges a fee and therefore shares in the profits of these illegal fees." The allegation is circular. The fees are not "illegal" unless they exceed the association's costs, costs that necessarily include the fee charged for the service. And section 1366 contemplates that the association will incur reasonable costs in connection with its collection efforts.

█ We conclude the duty to refrain from the conduct prohibited by section 1366.1 is imposed solely on the "association," the nonprofit entity designated by statute as having the responsibility to manage the affairs of the common interest development. Section 1366.1 has no application to an association's vendors. Competitive forces, not the statute, will constrain the vendors' fees and charges.

*The Conspiracy Allegations Do Not Create a Duty Where None Exists*

■ Perhaps recognizing section 1366.1 applies only to an association, Brown nevertheless attempts to impose liability on PCM by alleging it conspired with the association to violate section 1366.1. The effort is unavailing. In *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39 [260 Cal.Rptr. 183, 775 P.2d 508] (*Doctors' Company*), the California Supreme Court held: "A cause of action for civil conspiracy may not arise . . . if the alleged conspirator, though a participant in the agreement underlying the injury, was not *personally bound* by the duty violated by the wrongdoing . . . ." (*Id.* at p. 44, italics added.) Thus, in *Doctors' Company*, attorneys and expert witnesses hired by an insurance company could not be held liable for conspiring with the insurance company to violate a statutory duty owed only by the insurance company. (*Id.* at p. 49.)

■ The rule established by *Doctors' Company* is plain enough. But it was firmly cemented into our law in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503 [28 Cal.Rptr.2d 475, 869 P.2d 454]. "The invocation of conspiracy does not alter [the] fundamental allocation of duty. Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who *already owes the duty* and is not immune from liablility based on applicable substantive tort law principles." (*Id.* at p. 514, italics added.)

Having concluded PCM does not owe an independent duty under section 1366.1, we need only follow the high court's precedent. PCM cannot be liable in tort for conspiring with LFK to charge fees in excess of the amount necessary to defray LFK's costs. If, as Brown alleges, PCM "shares" in the "profits" represented by the fees for "late letters" and "lien letters," PCM violates no duty owed by it, either to the association or its members, because it is not prohibited from earning a profit, or from charging any fee the competitive market will bear. On the other hand, if LFK is, in fact, "sharing" in the fees charged by PCM (i.e., kickbacks), LFK may be violating section 1366.1, but to the detriment, not the advantage, of PCM.

Since we conclude PCM owed no duty, we do not reach the issue whether the alleged conduct was privileged under section 47, subdivision (b)(2), the so-called litigation privilege. The demurrer was properly sustained without leave to amend as to all causes of action of Brown's cross-complaint.

## DISPOSITION

The judgment is affirmed. PCM shall recover its costs on appeal.

Sills, P. J., and O'Leary, J., concurred.