[No. D052254. Fourth Dist., Div. One. Dec. 29, 2008.]

IRVIN K. DEY, Plaintiff and Appellant, v.
CONTINENTAL CENTRAL CREDIT et al., Defendants and Respondents.

COUNSEL

Law Offices of Deborah L. Raymond and Deborah L. Raymond for Plaintiff and Appellant.

Michael E. Williams for Defendants and Respondents.

OPINION

McCONNELL, P. J.—Irvin K. Dey appeals a judgment of dismissal entered after the court sustained without leave to amend the demurrer of Continental Central Credit (Continental) and Vacation Resorts International, Inc. (Vacation Resorts), on Dey's proposed class action complaint for violation of California's unfair competition law (UCL). (Bus. & Prof. Code, § 17200 et seq.) Dey contends he stated a cause of action based on a fee defendants charged him to collect a debt he owed a homeowners association because it was not reasonably related to the actual costs of collection. We affirm the judgment.

BACKGROUND

In June 2007 Dey filed a first amended complaint (FAC), a proposed class action, against Vacation Resorts and Continental. The FAC had a single cause of action for violation of the UCL, predicated on violation of the federal Fair Debt Collection Practices Act (FDCPA). (15 U.S.C. § 1692 et seq.)

The FAC alleged that under a written contract Dey purchased a timeshare interest in a condominium project called the "Shores at Lake Travis" (the Shores). The FAC alleged numerous facts on information and belief, including that Vacation Resorts provided management services to the Shores's homeowners association (Association); one of Vacation Resorts's duties was the collection of delinquent homeowner fees; Vacation Resorts retained Continental to perform the collections work; Vacation Resorts and Continental had an agreement under which Continental would not charge Vacation Resorts or the Association any collection fees, but it would instead collect additional fees from homeowners and share the fees with Vacation Resorts; the agreement effectively rewrote "the rules . . . of the Association to provide for a penalty assessment in the form of an arbitrarily calculated Collection Fee against members whose . . . accounts are referred for collection"; and Continental regularly added a collection fee to the principal

amount of debt when it "enters the debt into its system prior to or contemporaneously with its first contact with the debtor."[1]

The FAC also alleged the Association assessed delinquencies against him, as allowed by its written rules, and in April and May 2004, Continental sent Dey collection notices. The April notice sought $1,083.81 in principal, $13.07 in interest and a collection fee of $433.52, 40 percent of the outstanding principal. The May notice sought the same principal and collection fee and increased the amount of interest. Dey paid the full amount of the May notice.

The FAC alleged the collection fee constituted an unfair business practice within the meaning of the UCL. The UCL claim was based on defendants' alleged violation of the FDCPA by "[d]emanding a collection fee that does not reasonably reflect the actual cost of collection," and "us[ing] unfair or unconscionable means to collect or attempt to collect a debt by collecting a fee, charge, or expense not expressly authorized by the agreement creating the debt or permitted by law." The complaint prayed for restitution, injunctive relief and attorney fees. The FAC did not incorporate a copy of any contract or allege any particular contractual terms.

Vacation Resorts and Continental demurred to the FAC on the grounds of uncertainness and failure to state a cause of action. After a hearing, the court sustained the demurrer without leave to amend.

I

### Standard of Review

"A demurrer tests the sufficiency of a complaint as a matter of law." (*City of Chula Vista v. County of San Diego* (1994) 23 Cal.App.4th 1713, 1718 [29 Cal.Rptr.2d 89].) In reviewing the propriety of the sustaining of a demurrer, the "court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is

---

[1] When a plaintiff "lacks knowledge and the means of obtaining knowledge of facts material to his or her cause of action" because "the matters are peculiarly within the knowledge of the adverse party, and the pleader can learn of them only from statements of others," "the pleader may plead what he or she *believes* to be true as a result of *information* (hearsay) the pleader has received." (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 398, pp. 537–538, italics added.)

an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment." (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We review the trial court's ruling independently. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].)

II

*UCL/FDCPA*

A

■ The UCL does not proscribe specific acts, but broadly prohibits "unfair competition," meaning "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200.) The UCL "governs 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*).) " 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' " (*Ibid.*)

"By proscribing 'any unlawful' business practice, '[Business and Professions Code] section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech, supra*, 20 Cal.4th 163, 180.) Dey relies on provisions of the FDCPA as the basis for his UCL claim.

■ The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors." (15 U.S.C. § 1692(e).) The FAC alleged defendants violated title 15 United States Code section 1692f(1), which prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is *expressly authorized by the agreement* creating the debt or *permitted by law*." (Italics added.)

As the trial court explained, however, Dey did not attach any contract to the complaint, and the complaint did not allege "how or why the collection fees at issue . . . were not 'expressly authorized by the agreement creating the debt.' " The complaint merely alleged Dey acquired his timeshare interest under a written contract and, on information and belief, "the written rules of

the Association provide that it is entitled to recover costs incurred by it in the collection of delinquent assessments."

In their demurrer to the FAC, defendants argued the pleading was insufficient because, among other reasons, it did not allege any particular contract terms. In his opposition, instead of offering to rectify the problem, Dey criticized defendants for raising contract issues as they "are red herrings. None of them are even remotely relevant to the violations alleged, which stem from the conduct of [Vacation Resorts] and [Continental], not from any actions or failures to act by any other person or entity." Accordingly, the trial court properly found the FAC did not allege a violation of title 15 United States Code section 1692f(1) insofar as the statute pertains to fees not expressly authorized by an agreement.

As the court further noted, the FAC did not allege how the collection fee was not "permitted by law," the alternative ground for liability under title 15 United States Code section 1692f(1). "In the absence of an express agreement, whether charges are permissible within the meaning of the FDCPA turns on California law." (*Hunt v. Check Recovery Systems, Inc.* (N.D.Cal. 2007) 478 F.Supp.2d 1157, 1161, italics added.) It is Dey's burden to demonstrate why the collection fee is illegal, rather than defendants' burden "to justify that it is legal for it to charge a fee for [the] service." (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1560 [62 Cal.Rptr.3d 177] (*Berryman*).)

To show illegality, Dey relies exclusively on *Bondanza v. Peninsula Hospital & Medical Center* (1979) 23 Cal.3d 260 [152 Cal.Rptr. 446, 590 P.2d 22] (*Bondanza*). In *Bondanza*, the plaintiffs were patients or patients' parents who signed an admission agreement that obligated them to pay hospital charges and, if the account was referred to a collection agency, " 'reasonable attorney's fees and collection expense.' " (*Id.* at p. 263.) When the plaintiffs' accounts became past due, the hospital assigned them to a collection agency under a prior agreement that allowed the agency a fee of one-third of the principal debt. (*Ibid.*) The plaintiffs sued the hospital and the collection agency for an unfair or unlawful business practice under the UCL, alleging the collection fee constituted a penalty, it was greatly in excess of the actual collection costs and it was fixed before the collection agency incurred any costs. (23 Cal.3d at pp. 264–265.)

The court reversed a summary judgment for the hospital. (*Bondanza, supra*, 23 Cal.3d at p. 269.) In *Bondanza*, however, the predicate act on which the UCL violation was based was Civil Code section 1671,[2] which prohibits a

---

[2] Statutory references are to the Civil Code except when otherwise specified.

contract in which the amount of damages is set in advance unless "it would be impracticable or extremely difficult to fix the actual damage." (§ 1671, subd. (d).) The court noted the record did not show the hospital made any attempt to show liquidated damages were justified. (*Bondanza*, at pp. 266–267.) Further, the court found the collection fee was unfair because the hospital's admission agreement was an adhesion contract. (*Id.* at p. 267.)

Here, Dey's *original* complaint based its UCL cause of action on a violation of section 1671. In its ruling sustaining defendants' first demurrer, the court explained Dey "cites Civil Code sections relating to liquidated damages provisions in contracts, but he fails to attach or refer to any contract that is at issue in this case and fails to describe any liquidated damages provision in such a contract." The FAC, however, did not allege any violation of section 1671, and it did not allege any contract term pertaining to liquidated damages.

■ Thus, *Bondanza* is not on point. "A decision is authority only for the point actually passed on by the court and directly involved in the case. General expressions in opinions that go beyond the facts of the case will not necessarily control the outcome in a subsequent suit involving different facts." (*Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 985 [44 Cal.Rptr.2d 93]; see *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613].)

■ In finding the collection fee here legal, the court relied on *Brown v. Professional Community Management, Inc.* (2005) 127 Cal.App.4th 532 [25 Cal.Rptr.3d 617] (*Brown*), and *Berryman, supra,* 152 Cal.App.4th 1544, 1552, which are both from the Fourth District, Division Three, of the Court of Appeal. In *Brown*, an owner cross-complained against her homeowners association and its management company, alleging they violated section 1366.1 by charging her collection fees that exceeded the actual cost of collection. (*Brown*, at p. 536.) Section 1366.1, a provision of the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act) (§ 1350 et seq.), prohibits an "association" from imposing or collecting "an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied." (§ 1366.1.) The Davis-Stirling Act defines an "association" as "a nonprofit corporation or unincorporated association created for the purpose of managing a common interest development." (§ 1351, subd. (a).)

In *Brown*, the court affirmed the sustaining of the defendants' demurrer. (*Brown, supra,* 127 Cal.App.4th at p. 539.) The court explained the Davis-Stirling Act contemplates that the officers and directors of an association will be volunteer homeowners, and surely they are "not expected to perform all of the required services personally, and at no cost. Instead, the association must

either hire employees or contract with others to provide . . . services," including collection services to pursue fees and assessments owed the association. (*Brown*, at p. 539.) "While section 1366.1 prohibits an association from marking up the incurred charge to generate a profit for itself, the vendor is not similarly restricted." (*Ibid.*) The court held section 1366.1 applies solely to associations and "[c]ompetitive forces, not the statute, will constrain the vendors' fees and charges." (127 Cal.App.4th at p. 539.)

In *Brown*, the court noted that "section 1366, subdivision (e), authorizes an association to charge homeowners the very type of fees challenged by plaintiff. 'If an assessment is delinquent the association may recover all of the following: [¶] (1) *Reasonable costs incurred in collecting* the delinquent assessment, including reasonable attorney's fees. . . .' " (*Brown, supra*, 127 Cal.App.4th at p. 539.) The court explained that a management company's fees are not illegal unless they exceed the association's "costs," and the association's costs "necessarily include the fee charged [by the management company] for the service." (*Ibid.*)

In *Berryman, supra*, 152 Cal.App.4th 1544, the plaintiffs alleged a management company for a homeowners association violated the UCL by charging certain fees in connection with the transfer of title for home purchases. The underlying predicate act was the alleged violation of section 1368, which provides that "neither an association nor a community service organization or similar entity may impose or collect any assessment, penalty, or fee in connection with a transfer of title or any other interest except for the following: [¶] (A) An amount not to exceed the association's actual costs to change its records. . . ." (§ 1368, subd. (c)(1).)

The *Berryman* court affirmed the sustaining of the defendant's demurrer on the ground "the statutory language prevents associations from charging inflated fees for documents and for transfer of title and using those fees for other purposes; it does not constrain the amount a managing agent may charge for these services. 'Competitive forces, not the statute, will constrain the vendors' fees and charges.' " (*Berryman, supra*, 152 Cal.App.4th at p. 1552.) The court explained: "Throughout its briefs and in the court below, plaintiffs repeatedly stated that [the defendant]'s charges are 'unauthorized'— that is, not specifically permitted by statute or contract. The implication, however, that a for-profit business must have statutory or contractual authorization for providing a service to a third party and charging a fee for that service, is fundamentally flawed. Indeed, it is up to plaintiffs to demonstrate why a statute or a contract *prohibits* [the defendant] from doing so." (*Id.* at p. 1553.)

*Berryman* also states: "We understand plaintiffs may find the total of $325 in charges an irksome part of the home resale process. They may believe

those fees are out of line with market forces. Their remedy, then, is to persuade their association's board of directors to find a management company that offers these services for less. If [the defendant] realizes it is losing business because its fees are out of line with the marketplace, it will surely adjust its fees accordingly." (*Berryman, supra,* 152 Cal.App.4th at p. 1560.)

█ Dey criticizes the trial court's reliance on *Brown* and *Berryman* because his complaint did not allege any violation of the Davis-Stirling Act. He asserts he "has **NEVER** sought to apply standards governing [homeowners associations] to [defendants]." The court, however, properly relied on those opinions since they set forth California law on the fees vendors may charge homeowners associations, and California law controls whether the collection fee here was permitted by law within the meaning of title 15 United States Code section 1692f(1). In considering a demurrer, the court is not required to ignore controlling law merely because the plaintiff does not rely on it.[3]

█ We conclude that under *Brown* and *Berryman,* the trial court correctly determined that "the allegation that [defendants'] collection fees were greater than the actual costs incurred to collect the debt does not support a cause of action." Dey does not meet his burden of showing a contract or statute prohibits defendants' collection fee, and to the extent he believes the vendor services the Shores's homeowners association contracts for are noncompetitive, he may pursue the matter with the Association.

### B

The FAC also alleged defendants violated title 15 United States Code section 1692e(2)(A), which prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt." The FAC, however, alleged no supporting facts. Moreover, Continental's notices to Dey clearly stated the principal amount of the debt, the amount of interest and the amount of the collection fee. Accordingly, there was no false representation. Dey cites no authority for a different conclusion.

Further, the FAC alleged defendants violated title 15 United States Code section 1692e(2)(B), which prohibits a debt collector from falsely representing "any services rendered or compensation which may be lawfully received

---

[3] Dey's reliance on unpublished opinions from other jurisdictions (*Stolicker v. Muller, Muller, Richmond, Harms, Myers, & Sgroi, P.C.* (W.D.Mich. Sept. 9, 2005, No. 1:04-CV-733) 2005 U.S.Dist. Lexis 32404; *Kojetin v. C U Recovery, Inc.* (D.Minn. Mar. 30, 1999, Civ. No. 97-2273 (JRT/RLE)) 1999 U.S.Dist. Lexis 10930) is misplaced as the facts are distinguishable from those here, and in any event, established California law controls whether there was a violation of the FDCPA.

by any debt collector for the collection of a debt." Again, the FAC alleged no supporting facts, and Dey cites no supporting authority. As discussed, Dey made no showing the collection fee was illegal.

## III

### *Leave to Amend*

Dey cursorily contends the trial court abused its discretion by not granting him leave to amend. He asserts that since the FAC alleged he purchased his timeshare interest under a written contract, and the homeowners association collected delinquent assessments under written rules, he "should have been given an opportunity to amend his [complaint] to allege that the written cont[r]act and/or the written Association rules constitute a contract and contain an objectionable liquidated damages provision." Presumably, Dey seeks to bring this action within the ruling of *Bondanza, supra*, 23 Cal.3d 260.

To show an abuse of discretion, " 'the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.] However, such a showing need not be made in the trial court so long as it is made to the reviewing court.' " (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 999 [24 Cal.Rptr.3d 474]; see Code Civ. Proc., § 472c, subd. (a).) Although a demurrer ruling remains open on appeal, "it is the *trial court's* discretion that is at issue; the reviewing court may only determine, as a matter of law, whether the trial court's discretion was abused. In our view an abuse of discretion could be found, absent an effective request for leave to amend in specified ways, only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case." (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542 [282 Cal.Rptr. 80].) Further, a " 'court is not required to accept an amended complaint that is not filed in good faith, is frivolous or sham.' " (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 653 [32 Cal.Rptr.3d 266].) " '[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered.' " (*Barajas v. USA Petroleum Corp.* (1986) 184 Cal.App.3d 974, 987–988 [229 Cal.Rptr. 513].)

We cannot say the court abused its discretion by denying Dey leave to amend. Certainly, the potential for an amendment to allege the violation of section 1671, the liquidated damages provision, was not apparent or consistent with Dey's theory of the case. To the contrary, Dey's original complaint alleged a violation of section 1671 and the court sustained defendants' demurrer to it on the ground it did not allege a specific contract term

regarding liquidated damages. Dey's FAC abandoned a liquidated damages theory. Further, in opposition to defendants' second demurrer Dey criticized defendants for arguing the complaint was insufficient because it failed to allege any contract terms. Dey's current theory directly contradicts his theory at the trial court, and his request to amend does not appear to be in good faith.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to costs on appeal.

Nares, J., and McIntyre, J., concurred.