Filed 12/28/15  Certified for Publication 1/25/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAN LEWIS,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>YOUTUBE, LLC,<br><br>　　　Defendant and Respondent. | H041127<br>(Santa Clara County<br>Super. Ct. No. CV256300) |

Plaintiff Jan Lewis used the video-sharing service operated by defendant YouTube, LLC (YouTube).  After YouTube suspended her account, Lewis filed a complaint for breach of contract.  The trial court sustained YouTube's demurrer to her complaint without leave to amend.  We conclude that Lewis failed to establish that she was entitled to either damages or specific performance and affirm the judgment of dismissal.

## I.  Statement of the Case

In November 2013, Lewis filed her complaint for breach of contract and sought either damages or specific performance.  A month later, YouTube filed a demurrer.  It also filed a request for judicial notice of the YouTube Community Guidelines and several e-mails between Lewis and YouTube.  Lewis opposed both the demurrer and the request

for judicial notice.  YouTube filed a reply in support of its demurrer to the complaint. Following a hearing, the trial court granted the request for judicial notice, sustained the demurrer without leave to amend, and entered a judgment of dismissal.[1]  Lewis filed a timely notice of appeal.

## II.  Standard of Review

"'A demurrer tests the sufficiency of the complaint as a matter of law; as such, it raises only a question of law.  [Citations.]'  [Citation.]  Thus, the standard of review on appeal is de novo.  [Citation.]  'In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules.  "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . ."  [Citations.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]'  [Citations.]"  (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034.)  "We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings. [Citations.]"  (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

---

[1]     We have reached our conclusion without considering the YouTube Community Guidelines and the e-mails between Lewis and YouTube, and thus do not consider whether the trial court improperly took judicial notice of these exhibits.

### III.  The Complaint

Lewis alleged the following facts.  YouTube's Web site provides users with a way to share their videos.  Users create an account, select a video from their computer, and upload it to YouTube's computer servers.  YouTube does not charge users to upload videos or visitors to view them.  YouTube's annual revenue of several billion dollars is generated through the sale of advertisements.

YouTube posts its "Terms of Service" on its Web site.  A copy of the Terms of Service was attached as an exhibit to the complaint.

Lewis created the former YouTube channel, "bulbheadmyass" in 2006.  She accepted the Terms of Service and was bound by them.  In January 2007, she posted her first video featuring her musical group "Remington Riders."  Between January 2007 and November 2012, Lewis posted 24 videos, which gathered nearly 500,000 views, garnered many favorable comments, and were linked to by other musicians.  Lewis spent "hundreds of hours and thousands of dollars" producing these videos.  There was no commercial component to the production of the videos:  she did not sell the videos or audio versions of the music; and the Remington Riders did not perform in public.  Her sole reward was "the acclaim that she received from the YouTube community and the opportunity to make new friends . . . ."  Lewis responded to comments and shared her videos with other users who she thought might like them.  She only engaged with the YouTube community by means of conventional web browser software.

On November 19, 2012, Lewis discovered that YouTube had deleted her channel.  She received no notice that the channel was going to be deleted.  On November 25, 2012, Lewis sent an e-mail to YouTube and asked for help in restoring the channel.  She received the following reply:  "Thank you for your email.  [¶]  This account was found in Violation of TOU #4 Section H:  [¶]  http://www.youtube.com/t/terms  [¶]  You agree not to use or launch any automated system, including without limitation, 'robots,' 'spiders,' or 'offline readers,' that accesses the Service in a manner that sends more request

3

messages to the YouTube servers in a given period of time than a human can reasonably produce in the same period by using a conventional on-line web browser. Notwithstanding the foregoing, YouTube grants the operators of public search engines permission to use spiders to copy material from the site for the sole purpose of and solely to the extent necessary for creating publicly available searchable indices of the materials, but not caches or archives of such materials. YouTube reserves the right to revoke these exceptions either generally or in specific cases. You agree not to collect or harvest any personally identifiable information, including account names, from the Service, not to use the communication systems provided by the Service (e.g., comments, email) for any commercial solicitation purposes. You agree not to solicit, for commercial purposes, any users of the Service with respect to their Content. [¶] Regards, [¶] The YouTube Team"

YouTube did not notify Lewis which of the different acts set forth in its response resulted in the deletion of her channel. Lewis sent a letter to YouTube several days later and denied a violation of section 4.H. YouTube responded by sending an e-mail identical to its previous e-mail. In February 2013, Lewis filed an appeal with YouTube. She received an e-mail identical to the previous e-mails.

After Lewis made additional efforts to determine why her channel had been deleted, YouTube took the "unfounded position that [she] had been soliciting other users for commercial purposes."

Lewis's first cause of action for breach of contract incorporates by reference the previous allegations. It also alleges that "the Terms of Service incorporates an implied covenant of good faith and fair dealing such that neither party will do anything to destroy or injure the right of the other party to receive the benefits of the contract." When Lewis uploaded her videos on the YouTube Web site and actively engaged with the YouTube community, she helped generate the traffic that allowed YouTube to sell advertising to those who wanted to target the YouTube community. Though Lewis performed all

4

conditions required under the Terms of Service, YouTube breached the covenant of good faith and fair dealing.

YouTube deprived Lewis of her reasonable expectations under the Terms of Service, which included the expectation that if she complied with the Terms of Service that her channel would be maintained, that the channel would continue to include her videos, and that her channel would continue to reflect the same number of views and comments by fellow YouTube users. Lewis has no adequate remedy at law because "the acclaim that her channel received from fellow YouTube users represents a unique article having a special value to Lewis, for which Lewis cannot obtain a duplicate on the open market and there is no criteria by which the fair market value of that acclaim can be measured. As a consequence, Lewis requires a court order restoring her channel to its condition prior to YouTube's breach."

Alternatively, the second cause of action for breach of contract seeks damages, which "would include, but not be limited to, her out-of-pocket costs associated with producing the videos and the reasonable value of her time spent generating her original content and participating as a member of the YouTube community."[2]

## IV.  Discussion

### A.  Motion to Supplement the Record

Lewis has brought a motion to supplement the record on appeal to include her declaration. This motion was filed after YouTube filed its respondent's brief.

---

[2]     The parties agree that YouTube restored Lewis's account, which allowed her to upload copies of the videos previously posted to her account. However, YouTube did not display the historical view counts posted to her account. As counsel for Lewis explained at the hearing on the demurrer, "[a]ll that YouTube did was restore a bare channel. There were neither videos attached nor any of the other items that were associated with her videos prior to the deletion."

5

"Augmentation does not function to supplement the record with materials not before the trial court.  [Citations.] . . .  Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.  [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  However, pursuant to Code of Civil Procedure section 909, an appellate court may exercise its discretion to consider evidence that was not before the trial court in "'exceptional circumstances.'" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, italics omitted.)  Moreover, this authority may be exercised only "where trial by jury is not a matter of right or where trial by jury has been waived" (Code Civ. Proc. § 909); the evidence arose after judgment or was unavailable to the movant before judgment (*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 87); and evidence supports the affirmance of the trial court's judgment (*Wachovia Bank v. Lifetime Industries, Inc.* (2006) 145 Cal.App.4th 1039, 1048).

Here, Lewis sought damages for breach of contract and was entitled to a jury trial, the information in her declaration was known to her when she filed her complaint, and she is seeking to introduce evidence to reverse the judgment.  Thus, Code of Civil Procedure section 909 does not authorize this court to grant her motion to supplement the record on appeal.

California Rules of Court, rule 8.155 also does not assist Lewis.  It provides in relevant part: "(a)  Augmentation  [¶]  (1) At any time, on motion of a party or its own motion, the reviewing court may order the record augmented to include:  [¶]  (A) Any document filed or lodged in the case in superior court; or  [¶]  (B) A certified transcript-- or agreed or settled statement--of oral proceedings not designated under rule 8.130. [¶] . . . [¶]  (b)  Omissions  [¶]  (1) If a clerk or reporter omits a required or designated portion of the record, a party may serve and file a notice in superior court specifying the omitted portion and requesting that it be prepared, certified, and sent to the reviewing

6

court.  The party must serve a copy of the notice on the reviewing court.  [¶] . . . [¶]  (c) Corrections  [¶]  (1) On motion of a party, on stipulation, or on its own motion, the reviewing court may order the correction or certification of any part of the record.  [¶] (2) The reviewing court may order the superior court to settle disputes about omissions or errors in the record."  Since rule 8.155 authorizes the supplementation and correction of the appellate record to include only those documents that were part of the trial court's record, it does not support Lewis's position.

Accordingly, the motion is denied.  Since the record on appeal does not include Lewis's declaration, she may not rely on it.  (See *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003.)

### B.  Damages

Lewis contends that her complaint states a cause of action for breach of contract. Assuming that YouTube has breached the Terms of Service, we conclude that Lewis cannot establish damages.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.  [Citation.]"  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.)

The Terms of Service contain a limitation of liability clause.  It states:  "***IN NO EVENT SHALL YOUTUBE***, ITS OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, ***BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES WHATSOEVER RESULTING FROM ANY*** (I) ERRORS, MISTAKES, OR INACCURACIES OF CONTENT, (II) PERSONAL INJURY OR PROPERTY DAMAGE, OF ANY NATURE WHATSOEVER, RESULTING FROM YOUR ACCESS TO AND USE OF OUR SERVICES, (III) ANY UNAUTHORIZED ACCESS TO OR USE OF OUR SECURE

7

SERVERS AND/OR ANY AND ALL PERSONAL INFORMATION AND/OR FINANCIAL INFORMATION STORED THEREIN, (IV) ANY INTERRUPTION OR CESSATION OF TRANSMISSION TO OR FROM OUR SERVICES, (IV) ANY BUGS, VIRUSES, TROJAN HORSES, OR THE LIKE, WHICH MAY BE TRANSMITTED TO OR THROUGH OUR SERVICES BY ANY THIRD PARTY, *AND/OR (V) ANY ERRORS OR OMISSIONS IN ANY CONTENT OR FOR ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF YOUR USE OF AND CONTENT POSTED, EMAILED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE VIA THE SERVICES, WHETHER BASED ON WARRANTY, CONTRACT, TORT, OR ANY OTHER LEGAL THEORY*, AND WHETHER OR NOT THE COMPANY IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.  THE FOREGOING LIMITATION OF LIABILITY SHALL APPLY TO THE FULLEST EXTENT PERMITTED BY LAW IN THE APPLICABLE JURISDICTION."  (Italics & boldface added.)

Limitation of liability clauses " 'have long been recognized as valid in California.' [Citation.]"  (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1126.)  As in the present case, these clauses are appropriate when one party is offering a service for free to the public.  (See *Markborough California, Inc. v. Superior Court* (1991) 227 Cal.App.3d 705, 714 ["limitation of liability provisions are particularly important where the beneficiary of the clause is involved in a 'high-risk, low-compensation service.' "].)

Lewis argues that the limitation of liability clause in the Terms of Service is inapplicable.  She argues that she has not alleged that there were any errors or omissions in any content, but rather a deletion of her content without prior notice.

We interpret a contract "to give effect to the mutual intention of the parties as it existed at the time of contracting."  (Civ. Code, § 1636.)  We infer such intent solely from the language of the contract "if the language is clear and explicit."  (Civ. Code,

8

§ 1638.)  "The words of a contract are to be understood in their ordinary and popular sense" unless "used by the parties in a technical sense" or "a special meaning is given to them by usage."  (Civ. Code, § 1644.)

Here, the Terms of Service define "content" to include "the text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other materials you may view on, access through, or contribute to the Service."  "Omission" is defined as a "failure to do as one should."  (Webster's New College Dict. (4th ed. 2008) p. 1006.)  Thus, the limitation of liability clause encompassed Lewis's claim that YouTube wrongfully failed to include her videos, the number of views of these videos, and the comments on the videos by other YouTube visitors on its Web site. Characterizing her claim as a deletion of her content without prior notice does not persuade us that this clause is inapplicable.  "Delete" means "to take out."  (*Id.* at p. 382.) By claiming that YouTube wrongfully deleted her videos, the number of views of the videos, and the comments on the videos, Lewis is claiming that YouTube failed to do as it should by omitting content on its Web site.  Thus, since the limitation of liability clause applied, the trial court properly sustained the demurrer without leave to amend as to the second cause of action.

### C.  Specific Performance

Lewis next contends that the complaint adequately alleged a remedy for specific performance.

"Specific performance of a contract may be decreed whenever:  (1) its terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate.  (Civ. Code, § 3390, subd. 5 [court may not specifically enforce '[a]n agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable']; *Tamarind Lithography*

*Workshop, Inc. v. Sanders* (1983) 143 Cal.App.3d 571, 575 . . . .)" (*Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 766.)

Lewis argues that "the Terms of Service specifies that YouTube is granting a user . . . permission to access and use its 'Service'" and that "'Service' is 'all aspects of YouTube' offered 'via its website.'" Thus, she asserts that "[e]ach channel on the website includes the very features that [she] seeks to have restored, namely, the videos themselves, the view count, the comments and the URLs from other users who have linked to it."

As previously noted, the parties agree that YouTube has restored Lewis's account, and thus Lewis is allowed to upload copies of the videos previously posted to her account. Lewis is now seeking to have the court order YouTube to "restor[e] her channel to its condition prior to YouTube's breach." The Terms of Service require YouTube to grant users, such as Lewis, "permission to access and use the Service" under specified circumstances. However, there is no provision in the Terms of Service that requires YouTube to maintain particular content on the Service or at a particular location on the Service. There is also no provision in the Terms of Service pursuant to which YouTube is obligated to display view counts or comments associated with videos. There is nothing in the Terms of Service even suggesting that YouTube is a storage site for users' content. Since Lewis has failed to identify any provision of the Terms of Service that she seeks to have a court enforce, the remedy of specific performance is unavailable.

Lewis's reliance on *DVD Copy Control Assn. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697 (*DVD Copy*) is misplaced. In *DVD Copy*, the defendant licensed the Content Scramble System (CSS), which is the "technology used to prevent unauthorized copying of movies and other copyrighted material content stored on DVD's," from the plaintiff. (*Id.* at p. 701.) After the defendant developed a system that allowed a DVD to be played back without the physical copy of the DVD disc to be inserted into the DVD player, the plaintiff brought a breach of contract action that alleged, among other things,

10

that the defendant had not complied with the parties' agreement. (*Id.* at pp. 701-702.) This court held that the "General Specifications" were part of the parties' agreement and considered whether the remedy of specific performance was available to the plaintiff. (*Id.* at pp. 718-720.) Section 1.5 of the General Specifications stated that the CSS was "'intended to prevent casual users from the unauthorized copying of copyrighted materials recorded on [DVD's].'" (*Id.* at pp. 718-719.) *DVD Copy* reasoned that this language of intent "sets forth a standard by which [the defendant's] performance under the agreement can be measured" and the issue of what that standard required would be resolved when the trial court determined whether the defendant had breached this section. (*Id.* at p. 719.) Section 2.1.2 of the General Specifications set forth the DVD playback system for two types of playback devices. (*Id.* at pp. 719-720.) *DVD Copy* concluded that the section was "not so vague that the court cannot tell what it requires—it requires that playback of DVD content by a Drive plus Decryption device be performed utilizing the physical DVD." (*Id.* at p. 720.) In contrast to *DVD Copy*, here, no provision in the Terms of Service can serve as the basis for the relief that Lewis seeks.

### D.  Leave to Amend

Lewis also contends that she should be allowed the opportunity to amend her complaint.

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)  "Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.)  "'"[A] showing need not be made in the trial court so long as it is made to the reviewing

court." ' " (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 731; Code Civ. Proc., § 472c.)

Lewis claims in her appellate brief that she can amend her complaint to add allegations providing "the specifics of her items of damage and the reasons why specific performance is an available remedy." She states that "[t]he details of many of these items are set forth in the Lewis Declaration." However, this declaration is not part of the record on appeal. More importantly, since we have concluded that the limitation of liability clause of the Terms of Service applies to her claim for damages and none of the provisions of the Terms of Service can serve as the basis for specific performance, Lewis cannot amend her complaint to state a cause of action for breach of contract.

## V. Disposition

The judgment is affirmed.

_____

Mihara, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P. J.

_____

Márquez, J.

13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAN LEWIS,<br><br>　　　Plaintiff and Appellate,<br><br>　　v.<br><br>YOUTUBE, LLC,<br><br>　　　Defendant and Respondent. | H041127<br>(Santa Clara County<br>　Super. Ct. No. CV 256300)<br><br>**ORDER GRANTING REQUEST<br>FOR PUBLICATION** |

BY THE COURT:

　　　Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted. It is ordered that the opinion in this matter, filed on December 28, 2015, shall be certified for publication.


Date: 　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Mihara, J.


　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Bamattre-Manoukian, Acting P. J.


　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Márquez, J.


1

Trial Court:                                         Santa Clara County Superior Court

Trial Judge:                                      Honorable Mary Arand

Attorneys for Plaintiff and Appellant:       Thomas E. Moore III
Nicole V. Economou
Royse Law Firm, PC

Attorneys for Defendant and Respondent:    David H. Kramer
Jacob T. Veltman
Sara E. Rowe
Wilson Sonsini Goodrich & Rosati, PC

Lewis v. YouTube
H041127