Filed 11/6/14  McNeill v. McCann CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| J. MARK MCNEILL,<br><br>     Plaintiffs and Appellants,<br><br>     v.<br><br>RANDY MCCANN,<br><br>     Defendant and Respondent. | D064842<br><br><br><br>(Super. Ct. Nos. 37-2008-93080A;<br>  37-2009-00060197-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.L. Strauss, Judge.  Affirmed.

William J. Brown III and John T. Richards for Plaintiffs and Appellants.

Law Offices of Gregory J. Hout and Gregory J. Hout for Defendant and Respondent.

Owners J. Mark McNeill and his coplaintiffs (collectively Owners) owned certain residential units destroyed by a massive wildfire and joined a lawsuit against numerous defendants allegedly responsible for the destruction of these and other properties.  As additional claims specific to Owners, they alleged that, in connection with the rebuilding

of their units, the residential complex's Homeowners Association (HOA) and its Board of Directors, in conjunction with the HOA's casualty insurer (State Farm General Insurance Company) (Insurer), and the company hired by the HOA to rebuild their units (R&M Construction, Inc.) (R&M), conspired amongst themselves to reap economic profits at Owners' expense by agreeing to rebuild the destroyed units to a lesser standard than Owners should have received under Insurer's policy.

The present appeal is limited to the judgment entered in favor of Randy McCann, a shareholder in and President of R & M. McCann was named by Owners as one of the defendants because he was allegedly one of the principal conspirators. McCann moved for summary judgment, arguing there was no triable issue of material fact on whether he conspired with the HOA to breach the HOA's fiduciary duties to Owners as alleged in Owners' 23rd cause of action, nor was there any triable issue of material fact on whether he conspired with the HOA and/or Insurer to defraud Owners as alleged in Owners' 20th cause of action. The trial court agreed, and entered summary judgment in favor of McCann. Owners timely appealed and challenge the rulings in McCann's favor as to those causes of action.[1]

---

[1]     Owners' third amended complaint also alleged a claim against McCann for "Violation of the Unruh Act," and the court also entered summary judgment in McCann's favor on that claim, but Owners do not challenge that ruling. Additionally, one week before the hearing on McCann's summary judgment motion, Owners requested leave to file a fourth amended complaint that added claims asserting breach of contract (Owners' 29th cause of action) and negligence (Owners' 28th cause of action), apparently based on the allegations that R&M negligently constructed the contracted-for improvements. The court also granted McCann's individual motion for summary judgment as to those claims because there was no allegation or evidence supporting McCann's individual liability for

2

I

FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2007, the Witch Creek Fire damaged several units in the residential complex governed by the HOA. The HOA had an insurance policy with Insurer covering the units, and the HOA contacted Insurer to report the claim. Insurer appointed an adjuster for the claim, and Insurer prepared a room-by-room "scope of work." Insurer told the HOA that it was up to the HOA to hire a contractor, but did not tell the HOA which contractors to contact for bids.

After the HOA received Insurer's scope of work, it contacted several contractors, including R&M, and forwarded Insurer's scope of work and solicited bids from the contractors on that scope of work. R&M calculated a price for each item identified on Insurer's scope of work and submitted a bid to the HOA. R&M was ultimately retained by the HOA to perform the scope of work identified by Insurer under a work authorization contract between the HOA and R&M. After work commenced, R&M and the HOA agreed to several modifications to the work authorization contract, in the form

those claims under alter ego principles. Owners' brief on appeal contains no effort to challenge the rulings in McCann's favor on Owners' 28th and 29th causes of action, and we therefore do not further consider the propriety of those rulings.

[2] Our factual background, drawn from the papers filed in support of and in opposition to the motion for summary judgment, is stated most favorably to Owners (*LPP Mortgage, Ltd. v. Bizar* (2005) 126 Cal.App.4th 773, 775-776), but is limited to evidence that is competent and admissible, and disregards allegations that involve speculation, conjecture, imagination or guess work, and ignores cryptic, broadly phrased, and conclusory assertions or mere possibilities. (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525.)

of addenda and change orders, and R&M ultimately completed all of the work required by the work authorization contract and its addenda and change orders, and the HOA accepted R&M's work.[3]

During the course of R&M's work in rebuilding their units, the individual plaintiffs asked R&M for the price to install certain upgrades (in countertops, lighting, cabinetry, flooring, etc.) for which the Insurer would not pay under the policy (the upgrade work). R&M submitted prices and the plaintiffs contracted with R&M to pay many of the additional costs associated with their requested upgrade work. R&M completed the additional upgrade work and the plaintiffs paid R&M in accordance with the contracts for the upgrade work. The plaintiffs expressed anger that Insurer refused to pay for the upgrade work.

B. The Claims Against McCann

Owners' "conspiracy to defraud" claim alleged that Insurer, the HOA and its Board of Directors (and particularly the HOA's President, Mr. Boyer), R&M and McCann

---

[3]     We acknowledge that, in the proceedings below, Owners purported to list as "disputed" nearly every fact stated by McCann in support of his motion for summary judgment. However, our review of the papers filed in opposition to McCann's summary judgment motion reveal that almost all of Owners' "disputes" relied on allegations or contentions and contain little or no evidentiary basis for disputing the stated fact. For example, in response to McCann's evidence that R&M and the HOA agreed to several modifications to the work authorization contract, Owners stated this was disputed because "Plaintiffs do not trust Defendants, especially Randy McCann, who has lied repeatedly," and then cite several declarations explaining why the declarants mistrusted McCann and the HOA, but Owners' response was devoid of evidence raising a triable issue of fact on whether R&M and the HOA agreed to several modifications to the work authorization contract. Because Owners' opposition to McCann's summary judgment motion is largely devoid of admissible evidence on the *material* facts, we limit our analysis to whether the *facts* presented by Owners precluded summary judgment.

conspired to defraud Owners through a scheme to minimize the amount paid by Insurer to rebuild the units. The purported scheme involved the agreement among these conspirators that (1) Insurer would use a scope of repair less than required under the insurance policy, (2) the HOA would select Insurer's "preferred vendor" (R&M) to perform the work using R&M's "lowball" pricing for the scope of repair work, (3) Owners would be forced to pay R&M for work that should have been paid for by the Insurer by characterizing such work as additional upgrade work for which the Insurer would not pay, and (4) Boyer would conceal that Insurer's scope of repair was less than required under the insurance policy to enrich Boyer (presumably through some form of kickbacks), Insurer (through lower-than-required payouts under the policy) and R&M.[4]

Owners' "conspiracy to breach fiduciary duties" claim rested on parallel allegations. Owners alleged a claim for breach of fiduciary duty against Boyer and other HOA board members alleging, among other things, that Boyer and the HOA (1) falsely told Owners the insurance policy provided coverage to rebuild the units the way they had been built in 1984 knowing this was an improper standard of repair, (2) chose R&M to handle the reconstruction because Boyer and the HOA knew R&M was Insurer's preferred vendor and "totally in [Insurer's] pocket," (3) allowed R&M to act as a "public

---

[4] Owners' complaint was oblique on precisely how R&M was "enriched" by the scheme. It appears that, had Insurer paid for the level of repairs Owners claim *should* have been paid under the insurance policy, R&M would have garnered the same *amounts* and only the *source* of the payments would have changed. Accordingly, we construe Owners' allegation to mean R&M was enriched because, had R&M *not* been a captive contractor for Insurer that would conspire with Boyer and Insurer to minimize Insurer's payout, R&M would not have been selected by the HOA to perform the work at all.

adjuster" to negotiate the claim with Insurer, and (4) aided R&M to reap benefits from the upgrade by confirming that outside contractors would not be allowed to perform the work under R&M's WRAP policy until R&M's work was completed. All of these breaches of fiduciary duty, along with dozens of other alleged breaches, were part of a scheme to "save [Insurer] money and enrich the HOA, R&M and . . . Boyer, at Plaintiffs' expense." Owners' claim against McCann was that he conspired to "aid and abet" Boyer and the HOA in breaching their fiduciary duties to Owners.

C. The Summary Judgment Motion

McCann's motion for summary judgment proffered facts[5] showing (1) the Insurer initially determined the scope of work; (2) the HOA provided that scope to several contractors, including R&M, and solicited bids from those contractors; (3) R&M has never been a "preferred" vendor for or "hired gun" of Insurer; (4) neither R&M nor McCann ever conspired with Insurer or Boyer to minimize Insurer's scope of work or payout for the reconstruction; (5) R&M's prices were not a "lowball" bid but were instead reasonable and customary for the work specified in the scope of work; (6) R&M did not act as a public adjuster for HOA and, instead, the scope of work was determined by Insurer's adjuster and R&M simply priced the items identified in that scope of work; (7) R&M never gave any remuneration or anything to Boyer; and (8) neither R&M nor

_____

[5]     On appeal, Owners argue many of those facts should have been disregarded because the facts were averred to in McCann's declaration but he was unable to recall those facts during his deposition. However, Owners apparently did not object below to McCann's declaration, which waives any claim of error as to its admissibility. (Code Civ. Proc., § 437c, subd. (b)(5).)

6

McCann ever conspired with Boyer, the HOA, or anyone else, to do anything other than bid on the project as defined by Insurer and requested by the HOA, and to enter into the contract and complete the reconstruction required by the contract.

Owners argued their declarations raised triable issues of fact as to their claims against McCann and R&M. However, Owners' declarations showed only that (1) Boyer and McCann were acquainted because they were members of the same golf club[6]; (2) Owners were not provided with copies of the work authorization contract between R&M and the HOA; (3) the HOA did not permit Owners to be involved in selecting and contracting with R&M; (4) Insurer did not communicate with Owners; (5) Insurer did not pay for all of the reconstruction work to which Owners believed they were entitled under the policy; (6) Owners would not have paid for the additional upgrade work had Insurer paid for the work to which Owners believed they were entitled; (6) R&M placed limits on Owners' ability to tour the construction site while R&M and its subcontractors were in the process of completing their work; and (7) Insurer, the HOA and R&M would not allow Owners to bring in outside contractors to do construction work on the property until R&M had completed the insured work.

The court granted McCann's motion for summary judgment. Owners timely appealed.

---

6       Owners disputed "the *extent* of [the] connection [between Boyer and McCann]," but cited no evidence supporting their claim that Boyer and McCann had a closer relationship.

7

II

SUMMARY JUDGMENT PRINCIPLES

The purpose of summary judgment is to penetrate through pleadings to ascertain, by means of affidavits, the presence or absence of triable issues of material fact. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.) The trial judge determines whether triable issues exist by examining the affidavits and evidence, including any reasonable inferences that may be drawn from the facts. (*People v. Rath Packing Co.* (1974) 44 Cal.App.3d 56, 61-64.) In examining the affidavits, those of the moving party are strictly construed and those of the opposing party liberally construed. Any doubts as to the propriety of granting the motion are resolved in favor of the party resisting the motion. (*Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417.)

When the motion for summary judgment is supported by affidavits sufficient to sustain the motion, however, the burden shifts to the party opposing the motion to show that triable issues exist. (*Chern v. Bank of America* (1976) 15 Cal.3d 866, 873.) A party cannot avoid summary judgment based on mere speculation and conjecture (*Pena v. W. H. Douthitt Steel & Supply Co.* (1986) 179 Cal.App.3d 924, 931), but instead must produce admissible evidence raising a triable issue of fact. (*Craig Corp. v. County of Los Angeles* (1975) 51 Cal.App.3d 909, 915.)

A defendant moving for summary judgment can satisfy his or her burden of showing a prima facie entitlement to summary judgment in at least two ways. As explained by the court in *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1598:

"[A] moving defendant now has two means by which to shift the burden of proof under subdivision (o)(2) of section 437c to the plaintiff to produce evidence creating a triable issue of fact. The defendant may rely upon factually insufficient discovery responses by the plaintiff to show that the plaintiff cannot establish an essential element of the cause of action sued upon. [Citation.] Alternatively, the defendant may utilize the tried and true technique of negating ('disproving') an essential element of the plaintiff's cause of action."

To evaluate whether a moving party is entitled to summary judgment, the trial court must apply a three-step analysis. First, it must identify the issues framed by the pleadings because it is these allegations to which the motion must be directed. Second, it must determine whether the moving party's showing has satisfied his or her burden of proof and would, if unrebutted, justify a judgment in movant's favor. Finally, if the defendants' showing would prima facie justify a judgment in his or her favor, the third and final step is to determine whether the opposition demonstrates that a triable, material factual issue exists on the particular issue. (*Zuckerman v. Pacific Savings Bank* (1986) 187 Cal.App.3d 1394, 1400-1401.)

A moving defendant who chooses the "tried and true technique" of disproving an essential element must produce evidence that prima facie demonstrates an essential element of the plaintiff's claim cannot be established. (*Allyson v. Department of Transportation* (1997) 53 Cal.App.4th 1304, 1317-1318; see also *Ahrens v. Superior Court* (1988) 197 Cal.App.3d 1134, 1150.)

When the moving defendant has made the requisite prima facie showing, the burden shifts to the plaintiff to produce competent evidence demonstrating that, on the issues as framed by the pleadings to which defendant's motion is directed, a triable issue

9

of fact exists.[7] (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 73-74.) The evidence of the moving party is strictly construed and that of the opponent is liberally construed, and any doubts as to the propriety of granting the motion are to be resolved in favor of the party opposing the motion. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189.) In assessing whether summary judgment is appropriate, the facts submitted by the party opposing summary judgment, together with the reasonable and permissible inferences that may be drawn from those facts, must be accepted as true.[8] (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 148.)

---

[7] A plaintiff may not defeat a summary judgment motion by producing evidence to support claims outside the issues framed by the pleading. (*Robinson v. Hewlett-Packard Corp.* (1986) 183 Cal.App.3d 1108, 1131-1132; *City of Hope Nat. Medical Center v. Superior Court* (1992) 8 Cal.App.4th 633, 639.)

[8] When a party relies on inferences to raise triable issues of fact, the inferences must be reasonable and cannot be based on "speculation, conjecture, imagination, or guesswork." (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161.) Additionally, because a plaintiff bears the burden of proof by a preponderance of the evidence, the inferences he or she relies on to defeat summary judgment must be more than speculation and must instead satisfy the "more likely than not" burden the plaintiff will bear at trial. (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 487; cf. *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1580-1581 [grant of nonsuit proper when plaintiff's evidence does not support logical and reasonable inference in his or her favor and amounts to nothing more than speculation or conjecture]; *Salter v. Keller* (1964) 224 Cal.App.2d 126, 128 ["it is incumbent upon the plaintiff to produce evidence which supports a logical inference in his favor and which does more than raise a mere conjecture or surmise that the fact is as alleged"].)

IV

ANALYSIS OF OWNERS' CLAIMS OF ERROR

A. The "Incorrect Standard" Claim

Owners argue the trial court applied the incorrect standard when assessing McCann's motion because the trial court was "hostil[e]" toward Owners' theory of liability and therefore ignored the evidence supporting Owners' claims of conspiracy.  A trial court's ruling is presumed correct (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), and the appellate court indulges all intendments and presumptions to support the ruling on matters as to which the record is silent (*ibid.*), including the basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law (*People v. Jacobo* (1991) 230 Cal.App.3d 1416, 1430.)  The appellant has the burden of overcoming the presumption of correctness by affirmatively showing error.  (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125.)  The sole basis for Owners' claim that the court improperly weighed the evidence is that, after Owners argued (during oral argument) McCann "committed a misdemeanor by acting as a public adjuster [and] low-balled my clients' claims," the court asked if McCann had been convicted of a misdemeanor.  This innocuous question does not affirmatively show hostility to Owners, much less satisfy Owners' burden of affirmatively showing the court applied the wrong standard in assessing McCann's motion.

11

B. Summary Judgment Was Properly Entered on Owners' Conspiracy Claims

McCann affirmatively produced evidence that Insurer initially determined the scope of work and, when the HOA gave that scope to several contractors (including R&M) to solicit bids for that work, R&M simply priced the items identified in that scope of work. Moreover, McCann averred R&M's prices were not a "lowball" bid but were instead reasonable and customary for the work specified in the scope of work. McCann also affirmatively averred R&M has never been a "preferred" vendor for or "hired gun" of Insurer, and never conspired with Insurer to minimize the scope of work or payout for the reconstruction. Moreover, McCann averred R&M did not act as a public adjuster for the HOA and, instead, the scope of work was determined by Insurer's adjuster. Finally, McCann affirmatively averred R&M never gave any remuneration or anything to Boyer; and never conspired with Boyer, the HOA, or anyone else, to do anything other than bid on the project as defined by Insurer and requested by the HOA, and to enter into the contract and complete the reconstruction required by the contract.

On appeal, Owners do not argue these facts, if undisputed, would be insufficient to support summary judgment in favor of McCann on Owners' pleaded claims against him. Instead, Owners' claim on appeal is that the trial court ignored "substantial evidence of [McCann's] individual misconduct . . . committed in furtherance of a conspiracy to cheat Plaintiffs." Specifically, Owners claim there was evidence supporting the existence of a "conspiracy between [McCann] and [Boyer] to defraud Plaintiffs and breach the HOA Defendants' fiduciary duty toward Plaintiffs" by "disregard[ing] that the [Insurer's] policy was a replacement cost policy," which covered "what was . . . in each unit on the date of

12

the fire (as required by California law and as covered under [Insurer's] policy)," which then allowed McCann to "grossly over-charge Plaintiffs for so-called extras . . . which the [Insurer's] policy covered."

However, the above-quoted passages in Owners' opening brief are unaccompanied by any references to the record where we might, for example, find evidence that McCann and Boyer had meetings at which they and the Insurer agreed to ignore the terms of the Insurer's policy, or that the terms of the Insurer's policy even covered the extras for which plaintiffs were required to pay.[9] Owners' claims in their opening brief are equally unaccompanied by any references to the record where we might find any competent evidence that McCann had any prior relationship with (much less conspired with) Insurer,

---

[9] Indeed, it appears that a core allegation of Owners' conspiracy claims is that Owners were injured by the conspiracy because Insurer should have paid *all* of the costs to restore their units to their pre-fire condition, but Insurer conspired with McCann and Boyer to deny Owners those policy benefits (and thereby save Insurer money), which required Owners to pay R&M (under the rubric of "upgrades") to rebuild their units to their pre-fire condition. However, before the court entered summary judgment in McCann's favor, *Owners dismissed with prejudice all of their claims against Insurer*, including the core claim (contained in Owners' 19th cause of action) that Insurer refused to "fully, completely or fairly pay the coverages" it owed, as well as the claims that Insurer conspired with McCann and Boyer to defraud Owners (contained in Owners' 20th cause of action) by misrepresenting what was covered under the policy. Owners do not explain how their claims against McCann for conspiracy, which operates only to hold a third party jointly liable for the wrong committed by the direct perpetrator (see, e.g., *Klistoff v. Superior Court* (2007) 157 Cal.App.4th 469, 479 [" 'Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.' "]), survive dismissal with prejudice of the claims against the direct perpetrator of the wrongful act.

or that R&M's bid was a "low-ball bid."[10]  This default is an egregious violation of California Rules of Court, rule 8.204, subdivision (a)(1)(C), which requires an appellant to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears," and permits us to disregard Owners' claim that they presented evidence below raising a triable issue of fact.  (See, e.g., *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [reviewing court may disregard contentions unsupported by citation to the record]; *Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 796  [reviewing court may disregard evidentiary contentions unsupported by proper page citations to the record]; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16 [record citations in factual background at beginning of brief do not cure failure to include pertinent record citations in argument portion of brief].)  Under these circumstances, we agree with the court's observations in *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738-739, in which the court rejected a challenge by the appellant in part because:

10      The only citations to the record contained as part of Owners' argument are references to portions of the declarations of Mr. Malik and Mr. and Mrs. Price.  However, the cited pages (in addition to averring R&M "specializ[ed] in representing the interests of the insurance companies over insureds" without any showing what personal knowledge formed the basis for that conclusory allegation) merely reflect that (1) they were unhappy with McCann's handling of the credits for replacement costs values, (2) Boyer was hostile, (3) their units had been upgraded before the fire, (4) they were required to use subcontractors insured and approved by R&M if they wanted to make changes to the units while R&M was still involved in reconstructing the units, (5) they were not allowed on the site and were not allowed to directly contact the subcontractors doing the construction work, and (6) prices for certain changes were too high.  None of those passages suggested Owners possessed admissible evidence raising a triable issue of fact on the existence of an illicit agreement between McCann, Boyer and the Insurer to violate the terms of Insurer's policy protections.

14

"[Appellants'] brief pervasively alludes to factual matters unaccompanied by record citations. It is the duty of counsel to refer us to the portion of the record supporting his contentions on appeal. [Citations.] 'It is not incumbent upon this court to search a record of this character to determine a point raised in this manner.' [Quoting *Erro v. City of Santa Barbara* (1932) 123 Cal.App. 508, 513; citation.] [¶] . . . [¶] [Appellants'] brief continues . . . [to] allud[e] to and argu[e] from supposed evidence, almost none of which is supported by record citations. . . . [Respondent's] brief includes a . . . catalog of [the evidence]—fully backed by citations to the record—supporting the [judgment] but absent from [appellants'] presentation." (*Id.* at pp. 728-729, fn. omitted.)

In *Schmidlin*, the court concluded the appellants' peremptory assertions without evidentiary citations rendered the case "a prime candidate" for application of the rule that the appellants' presentation was "insufficient to impeach the judgment." (*Id.* at p. 739.) We likewise conclude Owners have forfeited any claim that they produced admissible evidence raising a triable issue of fact on the existence of a conspiracy between McCann, Boyer and the Insurer to defraud Owners or violate Boyer's fiduciary obligations to Owners.

Owners also assert the trial court erred to the extent its ruling was based on McCann's "immunity" under *Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39. In *Doctors' Co.*, the court recognized that an insurer owes a duty to its insured under certain circumstances to attempt to settle claims against its insured, and the insured sued the insurer for breach of that duty because the insurer failed to settle the claim but instead went to trial. (*Id.* at p. 42.) The insured also pleaded conspiracy claims against the attorneys hired by the insurer to defend the insured, and the expert witness retained by the insurer as part of the defense, alleging the attorney and expert conspired with insurer to

15

breach the insurer's duty to settle. The Supreme Court held that because the duty to settle was imposed solely on the insurer, the agents could not be held jointly liable under conspiracy allegations if their alleged conduct was taken as agents of the insurer, although the agents could be held liable for conduct undertaken as individuals for their independent individual advantage. (*Id*. at pp. 44-49; accord, *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1089-1090, abrogated on other grounds in *Martinez v. Combs* (2010) 49 Cal.4th 35, 62-66.)

Subsequently, in *Brown v. Professional Community Management, Inc.* (2005) 127 Cal.App.4th 532 (*Brown*), the court applied *Doctors' Co.* in a situation analogous to the present action. There, the plaintiff sued her homeowners association and the management company (PCM) hired by her homeowners association, alleging PCM (as part of its services to the homeowners association) prepared " ' "late letters" and "lien letters" for which it charge[d] a fee and therefore share[d] in the profits of these illegal fees.' " (*Brown,* at p. 536.) The plaintiff's complaint alleged (1) a claim against the homeowners association for violation of its duties to her under former Civil Code section 1366.1 because these fees were excessive fees improperly levied under that section, and (2) a claim against PCM alleging it conspired with the homeowners association to charge excessive fees and to share in the profits from these fees. (*Brown,* at p. 536.) The court first concluded the duty allegedly violated—the duty to not levy excessive fees under former Civil Code section 1366.1—was owed by the homeowners association alone and did not limit PCM from charging the homeowners association for PCM's services in preparing lien letters and late letters, noting that although the duty imposed "prohibits an

16

association from marking up the incurred charge to generate a profit for itself, the vendor is not similarly restricted. Plaintiff would have it that no vendor selling its services to an association could charge a fee, or, indeed, continue in business as a profit-making enterprise. That cannot be the law." (*Brown,* at p. 539.) The *Brown* court then concluded that, under *Doctors' Co.*, the plaintiff's conspiracy claim necessarily failed because the duty was owed by the homeowners association alone, explaining:

> "[Because] PCM does not owe an independent duty under section 1366.1, we need only follow the high court's precedent [in *Doctors' Co.*]. PCM cannot be liable in tort for conspiring with [the homeowners association] to charge fees in excess of the amount necessary to defray [the homeowners association's] costs. If, as Brown alleges, PCM 'shares' in the 'profits' represented by the fees for 'late letters' and 'lien letters,' PCM violates no duty owed by it, either to the association or its members, because it is not prohibited from earning a profit, or from charging any fee the competitive market will bear. On the other hand, if [the homeowners association] is, in fact, 'sharing' in the fees charged by PCM (i.e., kickbacks), [the homeowners association] may be violating section 1366.1, but to the detriment, not the advantage, of PCM." (*Brown, supra,* 127 Cal.App.4th at p. 540.)

Because *Brown's* application of *Doctors' Co.* involved facts substantively indistinguishable from those presented here, we conclude it is controlling. Owners' claim that HOA, Boyer or other board members violated their fiduciary duty to Owners, even assuming it was meritorious,[11] involves (as it did in *Brown*) the violation of a duty not owed by McCann to Owners and, as in *Brown*, the allegations of a conspiracy cannot

---

11      Indeed, we are puzzled over whether Owners' claim for "conspiracy to breach fiduciary duties" even remained viable because all of the board members who *did* owe the fiduciary duties allegedly breached, and with whom McCann presumably conspired, were voluntarily dismissed by Owners before the summary judgment motion was decided.

17

create a duty where none otherwise existed. As in *Brown*, McCann was under contract with the HOA to perform services and undoubtedly profited from that contract but, as in *Brown*, the fact the agent garnered profits from discharging its contract does not, without more, permit a claim against the agent for conspiring to violate a duty owed solely by his principal and not owed by the agent to the plaintiff. Owners have articulated no reason for us either to distinguish or to depart from *Brown*.[12] We conclude McCann was properly granted judgment on Owners' claims for conspiracy to aid and abet breach of fiduciary duty and to defraud.

C. Conclusion

We conclude the trial court correctly granted McCann's motion for summary judgment on all claims pleaded against him personally.

---

[12] Owners' only argument is that McCann allegedly engaged in separate misconduct—by intentionally acting as a "public adjuster" without the requisite license in violation of the Insurance Code—and this somehow saved Owners' conspiracy claims. First, we question whether a contractor, hired by an insured to repair damages for which an insurer will pay, transgresses these regulatory provisions of the Insurance Code by bidding on the scope of work or by later submitting change orders or addenda seeking additional payments for such work. Although Owners cite *Building Permit Consultants, Inc. v. Mazur* (2004) 122 Cal.App.4th 1400 to support such a claim, *Mazur* is distinguishable because the party retained by the insured in *Mazur* was not the contractor hired to perform the restoration, but was instead a consultant hired solely to assist the insured's attorney in negotiating the claim with the insurer. Indeed, although *Mazur* held such a consultant was required to be licensed, *Mazur* noted the consultant's contract stated the insured would hire an attorney to litigate or negotiate the claim and the attorney would then employ the consultant to support such attorney in litigating or negotiating the claim. (*Id*. at pp. 1404-1405.) Curiously, the *Mazur* court made no effort to explain why the exemption for the insured's attorney (Ins. Code, §§ 14021, subd. (e), 15008, subd. (c)) did not apply to experts or consultants working under that attorney. We therefore view *Mazur's* discussion and holding as open to question.

DISPOSITION

The judgment is affirmed.  McCann is entitled to costs on appeal.

McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McINTYRE, J.

19