Filed 1/8/15  Davis v. Purple Mountain Empire X. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEITH O. DAVIS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PURPLE MOUNTAIN EMPIRE X, LLC,<br><br>    Defendant and Respondent. | D065302<br><br><br>(Super. Ct. No. 37-2012-0088440-CU-WT-CTL)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on December 15, 2014, be modified as follows:

1.      On page 2, at the end of the first paragraph of part I.A, following the words "in a cross-complaint in *Davis I* (Cross-complaint)," delete the text of footnote 2 in its entirety, replacing it with the following text as footnote 2:  This replacement will not require renumbering of all subsequent footnotes:

PME X asked the trial court to take judicial notice of the Cross-complaint, as well as the Settlement Agreement and Mutual Release (Release), in *Davis I*. Both the Cross-complaint and the Release are contained in the court records in *Davis I*, and PME X's request was based on Evidence Code section 452, subdivision (d)(1), which allows the trial court to take judicial notice of "[r]ecords of . . . any court of this state." Although the record on appeal does not contain an order on PME X's request, based on the trial court's ruling on PME X's demurrer (discussed in the text, *post*), the court necessarily granted PME X's request to take judicial notice. We know from *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877, that "appellate courts should judicially notice any fact of which the trial court took proper judicial notice."

At oral argument, Davis questioned the propriety of taking judicial notice of the Release; however, we do not consider issues that, although raised at oral argument, are not adequately presented in the briefing. (*AmeriGas Propane, L.P. v. Landstar Ranger, Inc.* (2010) 184 Cal.App.4th 981, 1001, fn. 4.) In a petition for rehearing, Davis emphasizes the lack of a written ruling on PME X's request for judicial notice in support of the demurrer, suggesting that if judicial notice is to be taken on appeal, rehearing is necessary in order for the parties to brief the issue. We disagree. PME X requested judicial notice in the trial court, and Davis filed written opposition. On appeal (as in the trial court), PME X's principal

argument is that the Release bars Davis's current complaint. On appeal (as in the trial court), PME X's principal argument is that the Release bars Davis's current complaint. Davis could have timely raised any argument concerning judicial notice in his appellate briefing, but did not.

In any event, in *Performance Plastering v. Richmond American Homes of California, Inc*. (2007) 153 Cal.App.4th 659, following demurrer proceedings, on appeal the court determined third party beneficiary status in underlying settlement agreements, ruling in relevant part: "We take judicial notice of the [underlying] settlement agreements and consider their contents even though they are outside the four corners of the complaint, as there is and can be no factual dispute concerning the contents of the agreements." (*Id.* at p. 666, fn. 2.) Likewise, we will determine whether PME X is a third party beneficiary in the Release, because as we explain in the text, *post*, "there is and can be no factual dispute concerning the contents of [Davis's releases] of the agreement[]." (*Ibid*.)

Accordingly, on our own motion, we, too, take judicial notice of the Cross-complaint and the Release. (Evid. Code, § 459, subd. (a).)

3

There is no change in the judgment.

Respondent's petition for rehearing is denied.

NARES, Acting P. J.

4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEITH O. DAVIS, | D065302 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-0088440-CU-WT-CTL) |
| PURPLE MOUNTAIN EMPIRE X, LLC, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Law Offices of Peter C. Giffin, Peter C. Giffin, Rosa E. Shelton; Keith O. Davis, in pro. per., for Plaintiff and Appellant.

Fitch Law Firm and Stephen J. Fitch for Defendant and Respondent.

Plaintiff Keith O. Davis filed a complaint against Purple Mountain Empire X, LLC (PME X), alleging three causes of action.  PME X demurred to each cause of action.  The trial court sustained the demurrer without leave to amend the complaint and dismissed the

action.  Davis timely appeals from the order of dismissal.  (Code Civ. Proc., §§ 581d, 904.1, subd. (a)(1); *Etheridge v. Reins Internat. California, Inc.* (2009) 172 Cal.App.4th 908, 913 [signed order of dismissal constitutes a judgment for purposes of appeal].)  We will affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Davis I*

Linda Greenberg and another plaintiff filed a lawsuit against Davis and others (*Greenberg v. Davis* (Super. Ct. San Diego County, 2010, No. 37-2010-00105739) (*Davis I*)).  Davis named Greenberg and others[1] in a cross-complaint in *Davis I* (Cross-complaint).[2]

---

[1]    In addition to Greenberg and her husband Michael Sutherland, Davis named as cross-defendants Purple Mountain Management LLC, Purple Mountain Empire I LLC, Purple Mountain Empire II LLC, Purple Mountain Empire III LLC, Purple Mountain Empire IV LLC, Purple Mountain Empire V LLC, Purple Mountain Empire VI LLC, Purple Mountain Empire VII LLC, Purple Mountain Empire IX LLC, and Herman 55 LLC (all *Davis I* entities together, Purple Mountain LLC's).

[2]    PME X asked the trial court to take judicial notice of the Cross-complaint, as well as the Settlement Agreement and Mutual Release (Release), in *Davis I*.  Both the Cross-complaint and the Release are contained in the court records in *Davis I*, and PME X's request was based on Evidence Code section 452, subdivision (d)(1), which allows the trial court to take judicial notice of "[r]ecords of . . . any court of this state."  Although the record on appeal does not contain an order on PME X's request, based on the trial court's ruling on PME X's demurrer (discussed in the text, *post*), the court necessarily granted PME X's request to take judicial notice.  We know from *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877, that "appellate courts should judicially notice any fact of which the trial court took proper judicial notice."  At oral argument, Davis questioned the propriety of taking judicial notice of the Release; however, we do not consider issues that, although raised at oral argument, are not

2

In summary, in the Cross-complaint Davis alleged that Greenberg and the Purple Mountain LLC's owned a number of real properties; beginning in 2001 Greenberg and the Purple Mountain LLC's employed Davis, whose responsibilities included managing the various real properties and Greenberg's personal, business, financial and other pursuits; between 2003 and 2010, Davis's compensation with the various Purple Mountain LLC's changed, increasing significantly; but, beginning in 2010, Davis (as the employee) and Greenberg and the Purple Mountain LLC's (as the employers) disputed the compensation to which Davis then was and previously had been entitled. Davis further alleged that beginning in 2001 and continuing through early 2010, Greenberg made unwelcomed sexual advances to him — many of which resulted in sexual encounters. By 2010, Davis alleged, the professional and personal relationships between Greenberg and Davis were strained. Greenberg then terminated Davis's employment in early 2010, according to Davis's Cross-complaint, because of both their sexual relationship and Greenberg's husband's knowledge of it.

---

adequately presented in the briefing. (*AmeriGas Propane, L.P. v. Landstar Ranger, Inc.* (2010) 184 Cal.App.4th 981, 1001, fn. 4.) In any event, in *Performance Plastering v. Richmond American Homes of California, Inc*. (2007) 153 Cal.App.4th 659, following demurrer proceedings, on appeal the court determined third party beneficiary status in underlying settlement agreements, ruling in relevant part: "We take judicial notice of the [underlying] settlement agreements and consider their contents even though they are outside the four corners of the complaint, as there is and can be no factual dispute concerning the contents of the agreements." (*Id.* at p. 666, fn. 2.) Likewise, we will determine whether PME X is a third party beneficiary in the Release, because as we explain in the text, *post*, "there is and can be no factual dispute concerning the contents of [Davis's releases] of the agreement[]." (*Ibid*.)

Accordingly, on our own motion, we, too, take judicial notice of the Cross-complaint and the Release. (Evid. Code, § 459, subd. (a).)

3

In eight causes of action, Davis sought employment- and sexual harassment-related money damages from Greenberg and the Purple Mountain LLC's. As particularly relevant to this appeal, Davis alleged causes of action against Greenberg and each of the 10 Purple Mountain LLC's for (1) "Wrongful Discharge in Violation of Public Policy"; (2) "Quid Pro Quo Sexual Harassment"; and (3) "Hostile Work Environment Sexual Harassment."[3] The Purple Mountain LLC's cross-complained against Davis.

In the 10-page Release (see fn. 2, *ante*), Davis and related entities on the one hand and Greenberg, Sutherland and each of the 10 Purple Mountain LLC's on the other hand settled all claims by all parties in *Davis I*. The October 2012 Release applies to "all disputes, claims, or demands which the Parties have or had against each other [in *Davis I*] and any other disputes, claims, demands, judgments or rulings" and provides in relevant part:

> "NOW THEREFORE, the parties agree, represent and warrant as follows:
>
> "1.     For the promises contained in this Agreement by the parties and without admitting liability, [Greenberg, Sutherland and the Purple Mountain LLC's] agree:
>
> "a.     [To provide certain consideration to Davis and related entities.[4]]

---

[3]     The other five employment-related claims against Greenberg and the Purple Mountain LLC's were for "Non-Payment of Wages," "Breach of Contract," "Intentional Misrepresentation," "Negligent Misrepresentation," and "Retaliation." In a ninth cause of action, Davis sought money damages from Sutherland (Greenberg's husband) for "Interference with [Davis's] Contractual Relations" with Greenberg and the Purple Mountain LLC's.

[4]     Although this paragraph has been redacted in the copy of the Release contained in the record on appeal, paragraphs 10 and 20 refer to a payment that is to be made to Davis and his related parties in this paragraph 1.

4

"b.     Included in this Agreement is [*sic*] all past claims, judgments and rulings by any Party against any other Party to this Agreement.  Further Davis as a result of this Agreement will make no further claim or assertion as to being an employee of any [of the Purple Mountain LLC's].

"2.     Except for the obligations created by or arising out of this Agreement[, *Davis and related parties*] . . . *hereby release, quitclaim, and forever discharge* [*Greenberg, Sutherland and the Purple Mountain LLC's*] *as well as* their officers, directors, shareholders, members, managers, agents, employees, attorneys, predecessors, successors, heirs, executors, administrators, successors and assigns, and all other personals, firms, corporations, associations or partnerships, or *any other entity connected therewith*, both in their individual and representative capacities, *from all claims, demands, liabilities, damages, and causes of action arising out of* [Davis I, *the Cross-Complaint or the Purple Mountain LLC's cross-complaint*] including any claims under similar laws of the United States of America and the matters identified in Paragraph 1b, above ('Released Matters').  *The parties hereto understand and agree that this release and the Released Matters shall include and be applicable to any and all known and unknown claims that have arisen or may arise in connection with* [Davis I, *the Cross-Complaint or the Purple Mountain LLC's cross-complaint*] *or otherwise.*  [¶]  . . .  [¶]

"4.     The parties hereto intend and agree that this Agreement shall be effective as a full and final accord and satisfaction and general release of and from all Released Matters.  In furtherance thereof, the parties hereto acknowledge that they are familiar with Section 1542 of the Civil Code of the State of California, which provides as follows:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

"The parties . . . expressly waive and release any and all rights or benefits which such parties have or may have with respect to the Released Matters under Section 1542 of the Civil Code of the State of California and/or similar Federal Statues [*sic*], any predecessor statute, or any similar law or rule, of any other jurisdiction.

"*In connection with such waiver and relinquishment, each party acknowledges that such party is aware that claims or facts in addition to,*

5

*or different from, those which such party presently knows or believes to exist may be discovered and that this release herein shall be and remain in effect as a full and complete release notwithstanding the discovery and existence of any additional, new, or different claims or facts.*  [¶] . . . [¶]

"9.      The parties . . . agree that they shall not, at anytime hereinafter commence, maintain or prosecute any action, at law, or otherwise, or assert any claim against the parties herein released for damages, losses or for equitable relief relating to the matters herein released, which are defined in paragraph 2 and 3 as 'Released Matters'. *The releases contained in this Agreement are to be broadly interpreted.*"  (Italics added.)

Davis signed the Release, as did the others.

B.      *The Present Action*

Davis filed the complaint in the underlying action less than three months after the settlement that was effected by the Release in *Davis I.*  He named PME X as the sole defendant and alleged the following three causes of action:  (1) "Wrongful Discharge in Violation of Public Policy"; (2) "Quid Pro Quo Sexual Harassment"; and (3) "Hostile Work Environment Harassment."   In relevant part, Davis alleged that PME X owned real property in Hawaii; *Greenberg was the principal and owner of PME X*; Greenberg and PME X employed Davis, whose responsibilities included managing the Hawaii real property and "*perform*[*ing*] *various other functions for PME X, Greenberg, her other entities* and the Greenberg family"; PME X and/or Greenberg paid Davis; in and after April 2007, Greenberg made unwelcomed, at times successful, sexual advances to him; and Greenberg terminated Davis's employment as a result of Davis's insistence that the sexual relationship end and Greenberg's unwillingness to pay him according to the terms of his employment.  (Italics added.)

6

PME X demurred to each cause of action in the complaint, arguing that the Release barred Davis from pursuing the claims.[5] The court sustained the demurrer without leave to amend and dismissed the action. Davis timely appealed.

II

DISCUSSION

Davis argues that the trial court erred both in sustaining PME X's demurrer and in denying him leave to amend. PME X argues to the contrary, and we agree with PME X.

A. *Standards of Review*

In reviewing the ruling on a demurrer, "we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed.' . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. . . . And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. . . . The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318, citations omitted; see Code Civ. Proc., § 430.30,

---

5    PME X also demurred on additional theories to each of the causes of action, but because we will decide this appeal based on the preclusive effect of the Release, we need not discuss PME X's other arguments, since the dismissal will be affirmed if *any* ground stated in the demurrer is well-taken. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

subd. (a).)  The showing of such a " 'reasonable possibility' " can be made for the first time on appeal.  (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153-1154.)

When interpreting written agreements, unless resolution depends on the credibility of conflicting extrinsic evidence, the interpretation involves a question of law, which we review de novo.  (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866.)  Here, on demurrer, because the trial court did not resolve credibility issues or otherwise consider extrinsic evidence to interpret the Release, we exercise de novo review.  (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 57.)

B.    *The Release Bars Davis's Complaint*

    1.    *Law*

A release agreement is governed under general principles of contract law. (*General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 439.)  "The goal of contractual interpretation is to determine and give effect to the mutual intention of the parties."  (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763; see Civ. Code, § 1636.)  "Although the intent of the parties determines the meaning of the contract . . . , the relevant intent is 'objective' — that is, *the objective intent as evidenced by the words of the instrument, not a party's subjective intent. . . .*  The true intent of a contracting party is irrelevant if it remains unexpressed."  (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54-55, italics added, citations & fn. omitted.)

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  (Civ. Code, § 1559.)  Case law

8

applying this statute instructs that "[t]he third party need not be identified by name. It is sufficient if the [third party] claimant belongs to a class of persons for whose benefit it was made." (*Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1485.) Whether the contracting parties intended to benefit the third party "must appear in the terms of the agreement." (*Id.* at p. 1486.) The intended beneficiary bears the burden of proving the contracting parties intended to benefit it specifically or "a class of which [it] is a member." (*Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 348-349.) In deciding this issue, we must "read the contract as a whole in light of the circumstances under which it was made." (*Id.* at p. 349.)

2. *Analysis*

Davis emphasizes that the Release does not mention PME X, and his claims against PME X arose following circumstances during which he "was independently employed by and compensated by PME X," the entity (distinct from the Purple Mountain LLC's) that he alleges wrongfully terminated him. However, Davis also acknowledges that, under appropriate circumstances, a party like PME X can be a third-party beneficiary of a settlement and release agreement like the Release. (See, e.g., *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436; *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524.) The issue for our determination, therefore, is whether, by his agreements in the Release, Davis intended to release PME X from the claims he alleges in the underlying complaint.

In *Davis I*, Davis settled with and released Greenberg "*as well as . . . any other entity connected*" *with her*. (Italics added.) Based on the allegations in his complaint in

9

this action, Davis has established that, from his perspective, *PME X is an "entity connected" with Greenberg*.  In his five-page, 28-paragraph complaint, Davis affirmatively asserts at least six times that Greenberg was the principal, the owner, the managing member and/or the agent of PME X.  In addition, Davis affirmatively acknowledges that in the Release he settled with Greenberg's "other entit[ies]," but not with PME X — thereby conceding that PME X is one of Greenberg's "entit[ies]."

On appeal, Davis now contends that, because PME X was not named in the Release, he did not intend to benefit PME X.  We reject this argument.  "The law imputes to a person an intention which corresponds to the reasonable meaning of his or her words and acts.  Thus, where a person's words or acts, judged by a reasonable standard, manifest an intent to agree to a certain matter, that agreement is established, *regardless of what may have been the person's real but unexpressed state of mind on the subject*."  (*Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 560, italics added; see *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1171-1172 [where there is no "ambiguity as to the release's intended scope," we may interpret agreement as a matter of law]; *Crow v. P.E.G. Constr. Co.* (1957) 156 Cal.App.2d 271, 278-279.)  The only reasonable interpretation of Davis's words establishes his intent to release — i.e., to benefit — PME X in the Release:  (1) Davis released Greenberg and "any entity connected with" her, and (2) Davis affirmatively knew that Greenberg was "connected with" PME X.[6]

---

[6]     To the extent Davis's argument is intended to imply that he did not understand the scope of the release, his express agreements in the Release dispel such a possibility: "The terms of this Agreement have been negotiated by the parties"; "the language used in

10

Next, Davis contends that his "claims against PME X are patently distinct from any claims he previously had and which claims he released."  Because Davis provides no argument or legal authority, however, he has forfeited his right to appellate review of this contention.  (Cal. Rules of Court, rule 8.204(a)(1)(B) [An appellate brief must "support each point by argument and, if possible, by citation of authority"]; *In re Estate of Cairns* (2010) 188 Cal.App.4th 937, 949 [issue "waived" where party fails to cite authority or present argument].)  In any event, given the broad language of the Release, including the Civil Code section 1542 waiver, the three causes of action in the underlying complaint are included within the scope of the claims barred in the Release.

In the Release, the parties defined the "Released Matters" to include claims arising out of or relating to those asserted in *Davis I*.  Initially, we note the similarities between Davis's Cross-complaint (in *Davis I*) and his complaint in this action.  Both have causes of action for "Wrongful Discharge in Violation of Public Policy," "Quid Pro Quo Sexual Harassment" and "Hostile Work Environment Harassment," and both allege the same general underlying facts:  Davis was sexually harassed or discriminated against by Greenberg in her capacity as "principal" or "owner" of a limited liability company that owned real property during a time he was employed by the entity and/or Greenberg personally (2001-2010 in the Cross-complaint, 2007-2010 in the underlying complaint); and the named defendants were liable to Davis for money damages based on his

this Agreement shall be deemed to be the language chosen by the parties hereto to express their mutual intent"; he "fully understand[s] and appreciate[s] the foregoing words and terms and their significance"; he "read the foregoing release and . . . had the same explained to [him] by [his] attorneys"; and he "relied on the advice of counsel."

11

employment and the unwanted sexual advances from Greenberg.[7]  Finally, there is no issue regarding when Davis first became aware of his claims against PME X, since in his appellate briefing, he affirmatively acknowledges he was aware of his claims against PME X *at the time he signed the Release*.  Accordingly, either the underlying claims are not "patently distinct from" those in the Cross-complaint and thus released as part of the Released Matters,[8] or the language associated with Davis's waiver of the benefits of Civil Code section 1542 resulted in the release of the underlying claims.[9]

In sum, the trial court properly sustained PME X's demurrer.  Because PME X is a third party beneficiary of the Release, Davis's claims in the underlying complaint are barred by the Release.

---

[7]     Indeed, *other than* the identity of the defendants — i.e., Greenberg and the Purple Mountain LLC's in *Davis I* and PME X here — the three causes of action in the Cross-complaint and the underlying complaint here contain almost verbatim allegations.

[8]     The Released Matters include "*any and all known and unknown claims* that have arisen or may arise in connection with [*Davis I*, the Cross-complaint or Purple Mountain LLC's cross-complaint] or otherwise."  (Italics added.)

[9]     This language is found at paragraph 4 of the Release, which is set forth in full in the text, *ante*.  In part, Davis released *unknown* claims against Greenberg and any entity connected with her by "acknowledg[ing]" that he "is aware that claims or facts in addition to, or different from, those which such party presently knows or believes to exist may be discovered and that this release herein shall be and remain in effect as a full and complete release notwithstanding the discovery and existence of any additional, new, or different claims or facts "

12

C. *Davis Has Not Established That He Can Cure the Defects in His Complaint by Amendment*

 1. *Law*

As part of a plaintiff's burden to establish in what manner he can amend his complaint, he must show " 'how that amendment will change the legal effect of his pleading.' " (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 (*Goodman*).) This showing requires "a minimal *factual* showing to satisfy the court that such an amendment is appropriate." (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1214 (*McAllister*).) The showing also requires that the proposed amendment be consistent with the plaintiff's theory of the case up to that point in time. (*Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 731 (*Dey*).)

 2. *Analysis*

We next consider whether Davis has shown that there is a reasonable probability that he can cure the defects we have identified in part II.B., *ante*. Davis contends that he can amend his complaint "to allege an additional cause of action for fraud" on the basis "PME X has engaged in fraudulent activity which Mr. Davis discovered after he was terminated." In the trial court, he asserted the same contention, suggesting that he had only recently learned that Greenberg fraudulently entered into "this contract" with " 'a management company' " because " '[she] wanted to be in control of the day-to-day operations.' " Notably, Davis does not identify or further describe either the contract or the management company.

13

We are aware of the rule that requires "[l]iberality in permitting amendment" following the sustaining of a demurrer. (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227.) However, here Davis has not met his burden. First, he has not alleged any *facts* that might support an amendment (*McAllister*, *supra*, 216 Cal.App.4th at p. 1214); he only argues he could allege a "cause of action for fraud" based on unidentified "fraudulent activity" by PME X (see *Goodman*, *supra*, 18 Cal.3d at pp. 349-350 [the Supreme Court affirmed the denial of leave to amend to allege fraud where appellants failed to indicate "any ability upon their part to *plead and prove facts* which would . . . establish fraud," italics added]; *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184 [" 'In California, fraud must be pled specifically; general and conclusory allegations do not suffice.' "]). Further, Davis's showing does not establish that the proposed claim for fraud is consistent with his prior theories of employment- and harassment-based claims. (See *Dey*, *supra*, 170 Cal.App.4th at p. 731.) Finally, Davis has not attempted to show — and without knowing more about the alleged cause of action for fraud we are unable to discern — how the proposed claim would not be subject to the releases agreed to in the Release.

For these reasons, the trial court did not abuse its discretion in denying leave to amend.

## DISPOSITION

The order of dismissal is affirmed.


                                                              IRION, J.

WE CONCUR:


NARES, Acting P. J.


McDONALD, J.


15